IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 28, 2012

**STATE OF TENNESSEE v. ROBIN ELIZABETH WILLIS**

**Appeal from the Criminal Court for Hawkins County**
**No. 10-CR-445    John F. Dugger, Jr., Judge**

---

**No. E2011-01323-CCA-R3-CD - Filed September 26, 2012**

---

The Defendant-Appellant, Robin Elizabeth Willis, was convicted by a Hawkins County jury of theft of property valued at $1000 or more but less than $10,000, a Class D felony. The trial court sentenced her as a Range I, standard offender and ordered her to serve three years in the Tennessee Department of Correction. On appeal, Willis argues: (1) the evidence was insufficient to support her conviction; and (2) her sentence was excessive. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which, THOMAS T. WOODALL, J., joined. JOSEPH M. TIPTON, P.J., concurring in part and dissenting in part.

Douglas T. Jenkins, Rogersville, Tennessee, for the Defendant-Appellant, Robin Elizabeth Willis.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Kevin D. Keeton, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.** Cliff Evans, a detective with the Hawkins County Sheriff's Office, testified that in May 2010, he investigated a possible theft from Amanda Duncan, the seventy-six-year-old victim in this case. He said Edith Williams, the victim's daughter, initially contacted the sheriff's department because she was concerned that her mother was "being conned out of some money." Detective Evans spoke with the victim, confirmed the theft, and filed an offense report. He also investigated the victim's bank records, including nine checks totaling $1620 that the victim wrote to her niece, Robin Willis. The victim wrote these checks between the dates of May 14, 2010, and May 21, 2010.

Detective Evans was able to contact Willis on July 13, 2010, and he asked her to talk to him at the sheriff's department. He said that after she waived her <u>Miranda</u> rights, Willis provided a written statement to him in which she confessed to lying to her aunt, the victim, about being diagnosed with Leukemia and needing $180 per day to cover the costs of her cancer treatments. Willis further confessed in the written statement that she used the money she obtained from the victim to pay for her treatments at a pain clinic and for her Oxycodone prescriptions. After obtaining this confession, Detective Evans placed Willis under arrest.

Detective Evans said Willis admitted using some of the money she obtained from the victim to buy a new set of tires and to repair her car. He also said that although Willis told him she would repay the victim, this debt was never repaid.

Edith Williams, the victim's daughter, testified that the victim's bank informed her that several checks had been written by the victim to Willis because Williams's name was on the account. She explained that she was listed on the account in case her mother became ill again and was unable to pay her bills for herself. She also said she helped take her mother to appointments with the doctor and to get groceries. Williams asked that the bank not cash any of the checks written by her mother to Willis because she did not think that her mother had been writing that many checks. Williams then spoke to her mother, the victim, who confirmed that she had written several checks to Willis, her niece. When Williams approached Willis about the checks, Willis told her that she had been diagnosed with cancer and that the victim had helped her pay for her cancer treatments. Willis promised to repay the money from $2500 that she was to receive from a cousin in Pennsylvania. Willis also promised to pick up the victim at 10:00 a.m. the next day and to take her to get the money to repay her. At the time, Williams said she did not believe that Willis was telling the truth about her cancer diagnosis and treatments because she knew that Willis had health insurance coverage. Williams said that Willis was able to convince the victim that she had cancer because three of Willis's sisters had been diagnosed with cancer, two of them had recently died from cancer, and the third sister was dying of cancer at the time that Willis lied to the victim about her own cancer diagnosis. When Willis failed to appear and failed to repay the money, the victim and Williams tried unsuccessfully to contact Willis. Willis eventually contacted Williams and confessed that she did not have the money to repay the victim and that she did not have cancer but did have a drug problem. Williams then contacted the sheriff's department.

On cross-examination, Williams acknowledged that Willis had borrowed small amounts of money from the victim in the past and had either repaid this money or had done work for the victim in exchange for the money. She also acknowledged that the victim had loaned money to other family members, although these family members usually repaid the victim within a week or two.

The victim testified that in May 2010, Willis told her that she had breast cancer and that her insurance company would not pay for her cancer treatments. When Willis talked to the victim about her cancer diagnosis, she cried and told her that she did not want to die. As a result of this conversation, the victim wrote Willis a check on May 14, 2010, for $180. When she received this first check, Willis told the victim that she was going to repay her out of $2500 that she was to receive from a cousin in Pennsylvania. The victim said she wrote nine checks, totaling $1620, to Willis. She also said she never would have written Willis the checks if she had known that Willis did not have cancer. The victim stated that Willis never repaid her for these nine checks.

On cross-examination, the victim acknowledged that Willis had borrowed money from her on prior occasions but asserted that Willis had always repaid her or worked for her in exchange for the money. The victim also said that Willis had offered to make payments on the amount owed in this case and that Williams had agreed to help Willis get treatment for her drug problem. However, the victim said that after this offer to settle the debt was made, Willis asked her for an additional $160, ostensibly for her nephew because his mother had just passed away. The victim admitted that she had allowed other family members to borrow money but that they had always repaid her.

On re-direct examination, the victim reiterated that she would not have loaned Willis the money if she had known Willis had not been diagnosed with cancer. She also said she felt as if Willis had tricked her into giving Willis the money.

Willis, the Defendant-Appellant, testified and admitted she lied to the victim about having cancer. Willis said she had borrowed money from the victim in the past and had always repaid her. She also stated that at the time the victim gave her the checks involved in this case, she told the victim that she would repay her when she had the money.

On cross-examination, Willis admitted that she lied to the victim about having cancer and about needing money for her cancer treatments. She also admitted that she told the victim she did not want to die and asked for money for her fabricated cancer treatments as often as twice in the same day. Willis acknowledged that at the time she lied to the victim about her cancer diagnosis, two of her sisters had died from cancer and a third sister had been diagnosed with cancer. Willis further admitted that she lied to the victim about repaying her from money she claimed she was to receive from a cousin in Pennsylvania. Moreover, Willis acknowledged that she used the money the victim gave her to pay for her treatments at a pain clinic and to pay for some of her Oxycodone prescriptions. She further acknowledged that she asked the victim for $180 nine different times in a single week. Although Willis admitted that she had taken advantage of the victim, she adamantly denied stealing the $1620, claiming that the victim had loaned her money in the past. After deliberating, the jury found Willis guilty of theft of property valued at $1000 or more but less than $10,000.

**Sentencing Hearing.** No witnesses testified at the April 1, 2011 sentencing hearing, although a letter from Willis's mother was entered as an exhibit. In it, Willis's eighty-three-year-old mother stated she was completely dependent on Willis, who did all of her cooking, cleaning, and laundry and drove her to her weekly doctor appointments and to the hospital. In addition, a letter from Bill Rymer, a psychological examiner and school psychologist, was admitted as an exhibit. In this letter, Rymer said he reviewed Willis's academic records from 1971 to 1979, noted that Willis stopped attending school after her second year in the seventh grade, and estimated Willis's "intellectual functioning to range between 75 (Borderline Intelligence) and 85 (Low Average)."

The State argued for several enhancement factors and asserted that alternative sentencing was inappropriate in this case. The defense contended that if Willis had been able to obtain the money to repay this debt, she would not have been charged with this offense. Defense counsel asserted that Willis's conviction for writing a bad check occurred in April 2010 and the offense in this case occurred approximately one month later, which showed that Willis needed money badly during this period. He also argued that Willis was the sole caregiver for her elderly mother and that Willis's sister had been helping them financially before she passed away shortly before Willis committed the offense in this case. In addition, defense counsel noted that Rymer, a psychologist, opined that Willis had a low intelligence quotient. Moreover, defense counsel said he doubted that Willis "saw the true wrongfulness of her conduct" at the time she committed this offense. He also said he had to give Willis a ride to court because she could not find someone to drive her. Defense counsel argued that Willis committed the offense "for money" and for "tires for her car[,]" which was the only car that she and her mother possessed, and that there was "no real [sic] good reason to send her to prison." He also argued for the application of the following mitigating factors: Willis's criminal conduct neither caused nor threatened serious bodily injury; substantial grounds existed tending to excuse or justify Willis's criminal conduct, though failing to establish a defense; Willis was motivated by a desire to provide necessities for her family; and Willis was suffering from a mental or physical condition that significantly reduced her culpability for the offense. See T.C.A. § 40-35-113(1), (3), (7), (8) (2006). Defense counsel emphasized that Willis's record included only one prior misdemeanor conviction for writing a bad check.

Willis then made the following statement to the trial court:

I know it was wrong and stupid what I done [sic]. . . . I lost two sisters in June, a week apart. [One of these sisters] helped us financially. I know there was no excuse for the lie I told my aunt.

Aunt Mandy, I do love you and I'm sorry.

-4-

And I'm going to try to pay this money back. I just needed to keep my car going so I could take care of my mom, take her back and forth to the doctor. She's had two strokes.

Following this statement, the trial court and Willis had the following interaction:

Trial Court: You don't think anybody would've helped you to get your mom around to the doctor [or] to get the car and keep it running if you'd been truthful about it? You thought it was better to come up with this lie about you[r] having cancer and dying and [having] to have treatments and all this business that you came up with, this pretty intense and in[-]depth lie that carried on for a period of time. You had time to reflect and think about your conduct but you kept doing it. It wasn't just a one-time deal; you had a pretty good thing going there. You kept it rolling; didn't you?

Willis: Yes, sir.

Willis testified that although she tested positive for Oxycodone, she had a prescription for this medication. No other proof of this prescription was admitted at the sentencing hearing.

The trial court determined that only one mitigating factor applied, namely that Willis's conduct neither caused nor threatened serious bodily injury. Id. § 40-35-113(1). It also applied the enhancement factor that Willis had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]" Id. § 40-35-114(1) (2006). The court acknowledged that Willis's criminal history was "not a severe history" and said it did not give it "great weight . . . because [she] just had the one [conviction] in [her] lifetime for a worthless check." The court also applied the enhancement factor that the "victim of the offense was particularly vulnerable because of age or physical or mental disability[.]" Id. § 40-35-114(4) (2006). The court told Willis that she had "preyed on [the victim's] age and [the fact] that she trusted [her][.]" In addition, the court noted that Willis was on probation for her conviction for writing a bad check at the time she committed the offense in this case. See id. § 40-35-114(13) (2006). Finally, the court found that Willis had "abused a position of . . . private trust[.]" Id. § 40-35-114(14) (2006).

The trial court determined that confinement was "particularly suited to provide an effective deterrence to others likely to commit similar offenses[.]" Id. § 40-35-103(1)(B) (2006). At the conclusion of the hearing, the trial court sentenced Willis as a Range I, standard offender, ordered her to serve three years in the Tennessee Department of

Correction, and imposed restitution in the amount of $1620 and a fine in the amount of $2000 plus court costs. Willis filed a timely motion for new trial, which was denied. She then filed a timely notice of appeal.

## ANALYSIS

**I. Sufficiency of the Evidence.** Willis argues that the evidence was insufficient to support her conviction. In response, the State contends that the evidence presented at trial was sufficient to affirm the conviction because it established that Willis lied to the victim about needing money for her cancer treatments and that Willis took $1620 from the victim during a single week. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Tennessee Code Annotated section 39-14-103 (2006) states that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Theft of property valued at $1000 or more but less than $10,000 is a Class D felony. T.C.A. § 39-14-105(3) (2006).

In order to obtain a conviction in this case, the jury was required to find beyond a reasonable doubt that Willis, with the intent to deprive the owner of the property, knowingly obtained or exercised control over the $1620 without the owner's effective consent. See id. § 39-14-103. Viewed in the light most favorable to the State, the evidence at trial showed that Willis admitted that she lied to her aunt, the victim, about having cancer and about needing money for her cancer treatments in order to obtain the $1620. Specifically, the proof showed that Willis told the victim that she needed nine different payments of $180 over the course of a single week to cover the costs of her cancer treatments because her health insurance would not pay for them. To make this lie convincing, Willis shed tears in front of the victim and told her that she did not want to die. At the time of the offense, the victim was particularly vulnerable to this hoax because of her advanced age and because Willis had two sisters who had recently died from cancer and a third sister who was dying of cancer at the time Willis lied to her about her own cancer diagnosis. At trial, Willis admitted that she used the money she obtained from the victim to pay for her treatments at a pain clinic and for her Oxycodone prescriptions. Willis also admitted that she lied to the victim about repaying her from the $2500 she claimed she was to receive from a cousin. The victim testified that if she had known that Willis did not have cancer, she never would have written her the checks. The victim further testified that she believed that Willis would repay her at the time she wrote the checks, despite Willis's failure to do so. Although Willis claimed that the $1620 was a loan she would repay, it was the jury's prerogative to reject this defense. We agree with the State that the jury could have reasonably inferred from the evidence presented at trial that Willis never intended to repay the victim. Accordingly, we conclude that the evidence was sufficient to support Willis's conviction.

**II. Sentencing.** Willis argues that the trial court erred in enhancing her sentence from two years, the minimum in the sentencing range, to three years. She also argues that the trial court erred in denying her an alternative sentence. In response, the State contends that the record fully supports Willis's sentence.

This case is governed by the 2005 amended sentencing act. See id. § 40-35-210 (2006), Compiler's Notes. Under the amended sentencing act, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008) (quoting T.C.A. § 40-35-210(c) (2006)). Moreover, under the new law "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A.

§ 40-35-401(d) (2006).  This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court "may not disturb the sentence even if we would have preferred a different result."  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  However, in a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails."  Carter, 254 S.W.3d at 345 (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)).  Because the trial court properly considered the purposes and principles of the sentencing act and properly applied mitigating and enhancement factors in this case, our review is de novo with a presumption of correctness.  See id. at 345-46; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b); see Carter, 254 S.W.3d at 343; State v. Hayes, 337 S.W.3d 235, 264 (Tenn. Crim. App. 2010).  In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed."  T.C.A. § 40-35-103(5) (2006).  On appeal, the defendant has the burden of showing the impropriety of the sentence.  Id. § 40-35-401(d), Sentencing Comm'n Comments.

**Sentence Length.**  Willis initially argues that her sentence should be reduced from three years to two years.  Specifically, she contends that the trial court erred in applying the

enhancement factors that the victim was particularly vulnerable because of age or physical or mental disability and that she abused a position of private trust. Id. § 40-35-114(4), (14). She further contends that the trial court erred in using the need to deter individuals from taking advantage of the elderly as an enhancement factor. In addition, Willis argues that the trial court erred in failing to apply all of the mitigating factors requested by the defense.

In response, the State concedes that the trial court improperly applied the enhancement factor regarding the vulnerability of the victim but contends that the trial court arrived at the proper sentence given the other enhancement factors applicable in this case. The State further argues that under the amended sentencing act, this court does not have the authority to alter a sentence based on the trial court's failure to adjust a sentence in light of applicable, but merely advisory, enhancement or mitigating factors. See Carter, 254 S.W.3d at 346. We conclude that Willis's three-year sentence is proper.

First, Willis asserts that the trial court erred in applying enhancement factor (4), that the victim was particularly vulnerable because of age or physical or mental disability, because she claims that the victim "was an old pro [sic] at loaning people money" and because the victim "was in good shape[,]" "participated in the trial without faltering[,]" and "could move, hear[,] and speak without assistance." The State concedes that the trial court improperly applied this factor. However, regardless of this concession, we conclude that this enhancement factor was properly applied by the trial court.

Regarding this factor, the Tennessee Supreme Court stated, "[T]he vulnerability enhancement relates more to the natural physical and mental limitations of the victim than merely to the victim's age." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993), superseded on other grounds by statute as stated in State v. Jackson, 60 S.W.3d 738, 741-42 (Tenn. 2001). Moreover, this court held:

> [A] victim is particularly vulnerable within the meaning of this enhancement factor when the victim lacks the ability to resist the commission of the crime due to age, a physical condition, or a mental condition. A victim is also particularly vulnerable when his or her ability to summon[] assistance is impaired; or the victim does not have the capacity to testify against the perpetrator of the crime. However, a finding that one of these conditions exists does not, as a matter of law, mean that this factor is automatically considered. The appellant must have taken advantage of one or more of these conditions during the commission of the crime.

State v. Butler, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994) (internal footnotes omitted). The State bears the burden of establishing the victim's vulnerability; however, evidence of this factor "need not be extensive." State v. Poole, 945 S.W.2d 93, 97 (Tenn. 1997). This

enhancement factor should be applied by the trial court if the evidence demonstrates that the victim's vulnerability had some bearing on the victim's inability to resist the crime, to summon help, or to testify against the defendant. State v. Lewis, 44 S.W.3d 501, 505 (Tenn. 2001) (citing Poole, 945 S.W.2d at 96; State v. Kissinger, 922 S.W.2d 482, 487 (Tenn. 1996); Adams, 864 S.W.2d at 35).

At the sentencing hearing, the trial court made the following findings regarding this factor:

> [The victim] grew up in a different time when people told the truth; people back in that day, your word was your bond. She grew up in that time. She had a relative . . . coming to her in need [and claiming that she was] supposedly dying of cancer and need[ing] these treatments, and she believed you. She believed you because – now, in this day and time, people a lot younger, they are not going to believe – maybe believe that. They're going to check it out, but I think you preyed on that, her age and that she trusted you, and you played on that and you used that.

In this case, evidence was presented that the victim's daughter, Williams, was listed on the victim's bank account so that Williams could help with her elderly mother's affairs. Williams testified that she stopped payment on the nine checks the victim had written to Willis because she did not believe that the victim had written the checks. Although Williams immediately questioned Willis's explanation that she had cancer and that her insurance did not pay for her cancer treatments, the victim believed Willis without reservation. Although the victim did, in fact, testify, the evidence presented at trial indicated that she had some mental limitations related to her age that prevented her from realizing the hoax and resisting Willis's theft. Accordingly, we conclude that the trial court properly applied enhancement factor (4).

Willis also argues that the proof did not support the application of enhancement factor (14), that she abused a position of private or public trust in committing the offense against the victim in this case. The Tennessee Supreme Court provided the following guidance regarding this factor:

> [A]pplication of [this] factor requires a finding, first, that defendant occupied a position of trust, either public or private. The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith.

-10-

State v. Gutierrez, 5 S.W.3d 641, 645 (Tenn. 1999) (quoting Kissinger, 922 S.W.2d at 488).

Here, the trial court made the following findings regarding its application of enhancement factor (14):

> I give great weight to this enhancement factor, that you abused a position of private trust. She's your relative, and you took advantage of that by coming up with this elaborate lie that you carried on for a period of time from May 14[th] [sic] to May 21[st] [sic], . . . several occasions that you went back to get money and come up with this, I need treatments, I need treatments, I need treatments. And you used and violated and abused your position of private trust that you had with her. She trusted you. I give great weight to that factor.

The evidence presented at trial showed that Willis was the victim's niece, lived a short distance away from the victim, and frequently interacted with the victim. The proof also showed that Willis lied to the victim about her cancer diagnosis and her cancer treatments in order to obtain nine different checks totaling $1620 from the victim within a single week. The trial court concluded that Willis was in a position of private trust and that she abused this trust. We conclude that the record supports the trial court's application of this factor.

Willis further argues that the trial court erred in using the need to deter others from taking advantage of the elderly as an enhancement factor. However, the record shows that the trial court did not treat the need for deterrence in this case as an enhancement factor. Instead, the court merely applied the sentencing principle that "[p]unishment shall be imposed to prevent crime and promote respect for the law by . . . [p]roviding an effective general deterrent to those likely to violate the criminal laws of this state[.]" T.C.A. § 40-35-102(3)(A). Accordingly, Willis is not entitled to relief on this issue.

Finally, Willis argues that the trial court erred in failing to apply certain mitigating factors. First, Willis argues that substantial grounds excused or justified her criminal conduct and that these grounds were that she believed the money the victim gave her was a loan that she would repay. See T.C.A. § 40-35-113(3). Next, Willis argues that she "was motivated, at least in part, by [her] desire to have necessities to provide for her elderly and ailing mother." See id. § 40-35-113(7). Finally, citing Rymer's letter in which he opined that she had borderline intelligence, Willis argues that she was unable to fully appreciate the wrongfulness of her actions because of her mental infirmity. See id. § 40-35-113(8). We note that the defendant, in showing the impropriety of her sentence, has the burden of proving applicable mitigating factors on appeal. See id. § 40-35-401(d), Sentencing Comm'n Comments.

Upon review, we conclude that the trial court did not err in declining to apply mitigating factor (3), that "[s]ubstantial grounds exist[ed] tending to excuse or justify [Willis's] criminal conduct, though failing to establish a defense." Id. § 40-35-113(3). Willis argues on appeal that her criminal conduct should be mitigated by the fact that she believed the money the victim gave her was a loan that she would repay. At trial, Willis admitted that she used the money she obtained from the victim to pay for her treatments at a pain clinic and for her Oxycodone prescriptions. She also admitted that she lied about her cancer diagnosis and cancer treatments. Although Willis initially promised Williams, the victim's daughter, that she would repay the victim from $2500 that she was to receive from a cousin in Pennsylvania, Willis lied to the victim about the existence of the $2500. After Williams contacted Willis several times about her promise to repay the victim, Willis told Williams that she did not have the money to repay the victim and that she did not have cancer but did have a drug problem. At that point, Willis offered to make payments on the money she had obtained from the victim, and Williams agreed to help Willis get treatment for her drug addiction. However, a short time after Willis made this offer of repayment, Willis asked the victim for an additional $160, ostensibly for her nephew because his mother had just passed away. The victim acknowledged that she had loaned money to Willis in the past but asserted that Willis had always repaid her or worked for her in exchange for the money. As of the date of the sentencing hearing, Willis had not repaid any of the money she obtained from the victim. Given Willis's repeated dishonesty, her admissions that she used the money for Oxycodone and pain treatments, and her failure to repay the money, we conclude the trial court properly determined that mitigating factor (3) was not applicable.

We also conclude that the trial court did not err in declining to apply mitigating factor (7), that "[t]he defendant was motivated by a desire to provide necessities for the defendant's family or the defendant's self." Id. § 40-35-113(7). Although Willis told Detective Evans that she used some of the money she obtained from the victim to buy a new set of tires and to repair her car, she admitted at trial that she used this money to pay for her treatments at a pain clinic and for her Oxycodone prescriptions. We note that Willis's eighty-three-year-old mother submitted a letter, admitted as an exhibit at sentencing, wherein she stated that she was completely dependent on Willis, who did all of her cooking, cleaning, and laundry and drove her to her weekly doctor appointments and to the hospital. Significantly, this letter did not mention whether Willis used the money from the victim to repair her car for the family's benefit or to provide for the family's necessities. Willis claimed during her statement of allocution that she needed the money from the victim to keep her car running in order to care for her mother and that she had recently lost a sister who had helped her and her mother financially. Other than Willis's claims to this effect, there was no other proof indicating that Willis committed the theft against the victim because she was "motivated by a desire to provide necessities" for her elderly and ailing mother. Instead, the bulk of the evidence, which included Willis's admissions as well as testimony from the victim and Williams, established that Willis was motivated by a desire to obtain Oxycodone and pain treatments

because of her drug addiction. Consequently, we conclude that the trial court did not err in declining to apply mitigating factor (7).

Finally, we conclude that the trial court did not err in failing to apply mitigating factor (8), that "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense[.]" Id. § 40-35-113(8). Citing Rymer's letter in which he opined that Willis had borderline intelligence, Willis argues that she was unable to fully appreciate the wrongfulness of her actions because of her mental infirmity. This court has stated that "while Tennessee Code Annotated section 40-35-113(8) allows a court to consider any mental condition that significantly reduced the Appellant's culpability, the Appellant must sufficiently establish not only the presence of a defect, but also a causal link between his ailment and the offense charged." State v. Robert James Yoreck, III, No. M2004-01289-CCA-RM-CD, 2003 WL 23613823, at *4 (Tenn. Crim. App. June 29, 2004)). Although Willis argues in favor of this mitigating factor, she failed to offer any proof at sentencing that created a causal connection between her mental condition and the theft offense. In fact, Willis failed to present any expert medical testimony regarding her mental condition at the sentencing hearing, choosing instead to rely on the letter from Rymer, a school psychologist, who reviewed her school records and opined that her "intellectual functioning to range between 75 (Borderline Intelligence) and 85 (Low Average)" and on general statements by defense counsel that he doubted Willis "saw the true wrongfulness of her conduct" during the commission of the offense. Given that Willis presented no evidence showing how her mental condition was causally linked to the offense of theft, we conclude that the trial court properly determined that mitigating factor (8) did not apply. Accordingly, the trial court did not err in failing to apply the aforementioned mitigating factors. Moreover, we conclude that Willis failed to provide sufficient evidence supporting the application of the "catch-all" mitigating factor in Tennessee Code Annotated section 40-35-113(13).

As a Range I, standard offender, Willis was subject to a sentencing range of two to four years for the Class D felony. See id. § 40-35-112(a)(4) (2006). After applying four enhancement factors and one mitigating factor, the trial court sentenced her to three years in the Tennessee Department of Correction. Upon review, we conclude that the trial court's imposition of a three-year sentence in this case was proper.

**Alternative Sentence.** Willis also argues that the trial court erred in denying her an alternative sentence. Specifically, she argues that she should have been given a sentence of full probation or a community corrections sentence. In response, the State argues that Willis failed to show the impropriety of her sentence and failed to request a community corrections sentence at the sentencing hearing. We agree that the denial of alternative sentencing was proper.

-13-

Initially, we note that Willis's appellate brief contains no authority to support her claim that she is entitled to an alternative sentence. Consequently, we conclude that Willis has waived this issue for failing to make an argument with supporting authority. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Moreover, a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."). Tenn. R. App. P. 27(a)(7). Failure to comply with this basic rule will ordinarily constitute a waiver of the issue. State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). Waiver notwithstanding, we conclude that Willis is not entitled to an alternative sentence in this case.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006). A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see Ashby, 823 S.W.2d at 169.

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. State

-14-

v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. Id. (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants. Id. § 40-35-303(b) (2006). However, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

Willis argues that the trial court erred in declining to grant her a community corrections sentence. The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Id. § 40-36-103(1) (2006). Eligible offenders under the Community Corrections Act include:

-15-

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses; and

(2) Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

Id. § 40-36-106(a)(1)(A)-(F), (2) (2006).  Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right."  State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)).  Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter."  T.C.A. § 40-36-106(d) (2006).

Here, the record indicates that the trial court denied Willis alternative sentencing based on its finding that confinement was "particularly suited to provide an effective deterrence to others likely to commit similar offenses[.]"  T.C.A. § 40-35-103(1)(B). However, the record shows that no proof was presented at the sentencing hearing regarding the need to deter others from committing similar offenses pursuant to section 40-35-103(1)(B).  See State v. Nunley, 22 S.W.3d 282, 286 (Tenn. Crim. App. 1999) (holding that in order to use deterrence as a justification for confinement, evidence must be presented

-16-

indicating some special need for deterrence in that jurisdiction).  Moreover, we conclude that the circumstances of the offense were not so "violent, horrifying, shocking, reprehensible, [or] offensive" as to require a denial of alternative sentencing based on the seriousness of the offense pursuant to section 40-35-103(1)(B).  State v. Bottoms, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001) (internal quotations and citations omitted); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991); State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981). Furthermore, we acknowledge that Willis did not have "a long history of criminal conduct" pursuant to section 40-35-103(1)(A).  Therefore, these factors do not support a denial of alternative sentencing in this case.

However, we conclude that "[m]easures less restrictive than confinement [had] frequently or recently been applied unsuccessfully" to Willis pursuant to code section 40-35-103(1)(C).  The undisputed evidence at the sentencing hearing was that Willis was on probation for a conviction for writing a bad check at the time she committed the offense in this case.  We conclude that the applicability of code section 40-35-103(1)(C), along with Willis's calculated dishonesty to her elderly aunt regarding this hoax, provided a sufficient basis on which to deny all forms of alternative sentencing.

## CONCLUSION

Willis has failed to establish the insufficiency of the evidence and the impropriety of her sentence.  We affirm the trial court's judgment.

_____
CAMILLE R. McMULLEN, JUDGE